# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| M/V Q JAKE, her engines, tackle, apparel, furniture, etc., *in rem* and M/V SERENA P, her engines, tackle, apparel, furniture, etc., *in rem* | * CIVIL ACTION<br>*<br>* NO.<br>*<br>* SECTION |
| VERSUS | *<br>* MAGISTRATE |
| UNITED BULK TERMINALS DAVANT, LLC, MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC, ADMIRAL BULKER, *in rem*, and EUREX BULKER *in personam*, KOKUKA GLORIOUS, *in rem*, and CAMELLIA MARITIME S.A., *in personam*, CANAL BARGE COMPANY, INC., and INGRAM BARGE COMPANY | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## VERIFIED ORIGINAL COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Q JAKE Shipping Ltd. ("Q JAKE Shipping"), not making a general appearance, but appearing herein solely as *in rem* claimant and owner of the M/V Q JAKE and making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty & Maritime Claims of the Federal Rules of Civil Procedure, and SERENA P Stefan Patjens ("Stefan Patjens"), not making a general appearance, but appearing herein solely as *in rem* claimant and owner of the M/V SERENA P and making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty & Maritime Claims of the Federal Rules of Civil Procedure, for their Verified Complaint against United Bulk Terminals Davant, LLC ("UBT"), Marquette Transportation Company Gulf-Inland, LLC ("Marquette"), Canal Barge Company, Inc. ("Canal Barge"), Ingram Barge Company ("Ingram"), ADMIRAL BULKER, *in rem*, and her owners, Eurex Bulker SA, *in*

2810817-1

*personam*, and KOKUKA GLORIOUS, *in rem*, and her owners Camellia Maritime S.A., *in personam*, aver as follows:

1.

This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2.

Venue is proper in this judicial district because the events giving rise to these claims occurred in this district.

**PARTIES**

3.

At all times pertinent to this cause, Q JAKE Shipping was a company organized under and existing by virtue of the laws of a foreign nation, with its principal place of business outside the United States, and was the owner of the M/V Q JAKE.

4.

The M/V Q JAKE is a bulk carrier bearing IMO number 9461324 and flagged under the laws of the Marshall Islands and home-ported in Majuro.

5.

At all times pertinent to this cause, SERENA P Stefan Patjens was a company organized under and existing by virtue of the laws of a foreign nation, with its principal place of business outside the United States, and was the owner of the M/V SERENA P.

6.

The M/V SERENA P is a containership bearing IMO number 9317913 and flagged under the laws of Liberia and home-ported in Monrovia.

7.

United Bulk Terminals Davant, LLC ("UBT"), is a Louisiana limited liability company with its principal place of business in Davant, Louisiana, which at all times pertinent hereto, was authorized to do and doing business in the State of Louisiana within the jurisdiction of this Honorable Court as bailee of the barges which broke away from their moorings at the UBT barge fleeting facility on the left descending (east) bank of the Mississippi River at about Mile 54 Above the Head of Passes ("AHP") and holed the M/V Q JAKE. UBT had the responsibility of caring for any vessels, including barges, in its custody. When a bailment exists and the property in its custody gets loose and/or causes damage, a presumption arises that the bailee's negligence caused the damage.

8.

Marquette Transportation Company Gulf-Inland, LLC ("Marquette") is a non-Louisiana limited liability company with its domicile in Dover, Delaware, which at all times pertinent hereto, was authorized to do and doing business in the State of Louisiana within the jurisdiction of this Honorable Court as the owner and operator of the fleet boats that operated UBT's Davant fleeting facility on the left descending (east) bank of the Mississippi River at about Mile 54 AHP.  Marquette had the responsibility of caring for any vessels, including barges, in its custody. When a bailment exists and the property in its custody gets loose and/or causes damage, a presumption arises that the bailee's negligence caused the damage.

9.

Ingram Barge Company ("Ingram"), is a non-Louisiana business corporation with its domicile in Nashville, Tennessee, which at all times pertinent hereto, was authorized to do and doing business in the State of Louisiana within the jurisdiction of this Honorable Court as the

owner and operator of the barges ING 2103 and ING 1577 that drifted from the UBT fleeting facility on the left descending (east) bank of the Mississippi River at about Mile 54 AHP.

10.

Canal Barge Company ("Canal Barge"), is a Louisiana business corporation with its principal place of business in Belle Chasse, Louisiana, which at all the time pertinent hereto, was authorized to do and doing business in the State of Louisiana within the jurisdiction of this Honorable Court as the owner and operator of barge CBY 266 that drifted from the UBT fleeting facility on the left descending (east) bank of the Mississippi River at about Mile 54 AHP.

11.

ADMIRAL BULKER, IMO No. 9470820, her engines, tackles, apparel, equipment, appurtenances, etc., *in rem*, which upon information and belief is a Marshall Islands flag bulk carrier duly documented in the name of, managed by, and/or operated by Eurex Bulker SA, *in personam*, called upon the Port of New Orleans at the time of the alleged incident made the subject of this litigation, and she is or will be within the jurisdiction of this Honorable Court while the action is pending.

12.

KOKUKA GLORIOUS, IMO No. 9568500, her engines, tackles, apparel, equipment, appurtenances, etc., *in rem*, which upon information and belief is a Panama flag tanker duly documented in the name of, managed by, and/or operated by Camellia Maritime S.A., *in personam*, called upon the Port of New Orleans at the time of the alleged incident made the subject of this litigation, and she is or will be within the jurisdiction of this Honorable Court while the action is pending.

**GENERAL ALLEGATIONS**

13.

This case arises out of a twenty-two barge breakaway from the UBT facility on January 20, 2016. At the time of this incident, the Mississippi River was at a height of 16.62 feet on the Carrollton Gage, and the United States Coast Guard Captain of the Port of New Orleans imposed operating restrictions and additional duties on vessels and facilities due to high water conditions. Upon information and belief, UBT's own operating procedures required the same operating restrictions and additional duties based on previous incidents that occurred in similar high water events.

14.

Before January 20, 2016, Ingram delivered unseaworthy barges to the custody and care of UBT and Marquette, and/or failed to warn that the barges had latent and non-apparent defects that rendered them incapable of bearing reasonably anticipated stresses.

15.

Before January 20, 2016, Canal Barge delivered unseaworthy barges to the custody and care of UBT and Marquette, and/or failed to warn that the barges had latent and non-apparent defects that rendered it incapable of bearing reasonably anticipated stresses.

16.

On January 20, 2016 at approximately 1150 local time, the ADMIRAL BULKER passed the UBT fleeting facility at an excessive speed and insufficient distance off, creating a hydrodynamic effect that unreasonably strained the UBT fleeting facility moorings during the high river conditions.

17.

On January 20, 2016 at approximately 1225 local time, the KOKUKA GLORIOUS passed the UBT fleeting facility at an excessive speed and insufficient distance off, creating a hydrodynamic effect that unreasonably strained the UBT fleeting facility moorings during the high river conditions.

18.

On January 20, 2016 at approximately 1230 local time and in the hours leading up to the breakaway, vessels owned and operated by Marquette neglected the UBT fleeting facility and the barge moorings in violation of statutory duties and the standard of good seamanship during the high river conditions.

19.

On January 20, 2016 at approximately 1230 local time, multiple barges and groups of barges broke away from the UBT facility. Upon information and belief, a block of fifteen barges broke free from the 1B Buoy (including the ING 2103 and ING 1557), a group of four barges broke away from barges moored at the 2C Buoy (including the CBY 266), and at least three other barges broke away from other barges at other buoys.

20.

On January 20, 2016 at approximately 1230 local time, the fifteen barges in the 1B block broke free from the buoy, topped around, and drifted sideways into the river, blocking the navigable channel. The barges drifted directly into the path of the downbound M/V Q JAKE, which was about one half mile upriver. In the exercise of good seamanship, the M/V Q JAKE took evasive action, but was unable to avoid the drifting, breakaway barges in the high river conditions. At approximately 1237, the M/V Q JAKE was holed on her port bow by the drifting

INGRAM 1557. The M/V Q JAKE proceeded downriver until a tug was able to assist her in turning around and heading upriver, after which she proceeded to Magnolia anchorage near Mile 46 AHP.

21.

On January 20, 2016 at approximately 1240 local time, another four barges broke away from a block of barges at the 2C buoy (including the CBY 266), topped around, and drifted sideways into the river. In the exercise of good seamanship, the M/V SERENA P took evasive action, but was unable to avoid the drifting, breakaway barges in the high river conditions. At approximately 1245, the M/V SERENA P was holed on her port side amidships by the drifting CBY 266. The M/V SERENA P proceeded downriver until she had sufficient room to anchor at Michelle Point, near Mile 41 AHP.

**ALLEGATIONS ON BEHALF OF M/V Q JAKE**

22.

On January 20, 2016, the M/V Q JAKE was under compulsory pilotage and was proceeding downbound in the Mississippi River during high water conditions when barges from the UBT Terminal and Barge Fleeting Area in Davant, Louisiana broke free and drifted into her path, embarrassing her navigation. The M/V Q JAKE took proper evasive action, but was unable to avoid the barges.

23.

The damages suffered by the M/V Q JAKE were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of United Bulk Terminals Davant, LLC and Marquette Transportation Company Gulf-Inland, LLC in the following particulars, among others, which will be shown at trial of this matter:

(1)      Failing to provide adequate moorings to ensure security of the fleet;

(2)      Failing to ensure that the fleet was moored so as to withstand the normal surge and suction and other forces of passing vessel traffic;

(3)      Failing to reduce the number of barges on moorings in light of the additional strain caused by high river conditions;

(4)      Failing to take immediate action to correct any deficiencies in the moorings and/or security of the fleeting operations;

(5)      Failing to comply with Coast Guard regulations and orders regarding fleet and vessel moorings;

(6)      Failing to take adequate measures to prevent the breakaway;

(7)      Failing to insure proper securing and re-securing of barges after other barges have been removed and/or added to the fleet;

(8)      Failing to exercise reasonable care in anticipating and considering both normal and adverse weather and/or high river conditions;

(9)      Failing to assign a person in charge of the fleeting facility to be in continuous surveillance and/or to observe and maintain a proper watch over the barges and vessels in the fleeting facility;

(10)    Failing to inspect the fleeting facility for movements that are unusual for properly secured vessels and barges;

(11)    Failing to ensure that the mooring to the fleet by any non-fleet vessels, such as harbor tugs, did not over charge the fleet's moorings, or alternatively to prohibit mooring by such non-fleet vessels;

(12)    Failing to ensure that the barge fleeting facility was within the permit limits and regulations promulgated by the U.S. Army Corps of Engineers and other local and federal authorities; and

(13)    Other acts of negligence, fault, or statutory violations which will be established at trial.

24.

The damages suffered by the M/V Q JAKE were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of ADMIRAL BULKER, in the following particulars, among others, which will be shown at trial of this matter:

(1) The ADMIRAL BULKER and those in charge of her navigation failed to exercise the necessary caution required by the circumstances;

(2) The ADMIRAL BULKER and those in charge of her navigation failed to maintain a proper course and speed required by the circumstances; and

(3) The ADMIRAL BULKER failed to take any or proper steps to minimize or avoid the effect of its wake and/or suction created when it passed the UBT fleeting facility.

25.

The damages suffered by the M/V Q JAKE were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of KOKUKA GLORIOUS, in the following particulars, among others, which will be shown at trial of this matter:

(1) The KOKUKA GLORIOUS and those in charge of her navigation failed to exercise the necessary caution required by the circumstances;

(2) The KOKUKA GLORIOUS and those in charge of her navigation failed to maintain a proper course and speed required by the circumstances; and

2810817-1                                        9

(3) The KOKUKA GLORIOUS failed to take any or proper steps to minimize or avoid the effect of its wake and/or suction created when it passed the UBT fleeting facility.

26.

The damages suffered by the M/V Q JAKE were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of Canal Barge Company, Inc. and Ingram Barge Company in the following particulars, among others, which will be shown at trial of this matter:

(1)    Failing to deliver seaworthy barges to the fleet; and

(2)    Failing to warn that the barges had latent and non-apparent defects that rendered them incapable of bearing reasonably anticipated stresses.

27.

United Bulk Terminals Davant, LLC, Marquette Transportation Company Gulf-Inland LLC, Canal Barge Company, Inc., Ingram Barge Company, ADMIRAL BULKER, *in rem*, her owners, Eurex Bulker SA, *in personam*, and KOKUKA GLORIOUS, *in rem*, and her owners, Camellia Maritime S.A., *in personam*, are liable under the general maritime law for any and all damages and/or injuries sustained by the M/V Q JAKE.

28.

As a result of the above described events, the M/V Q JAKE sustained damages totaling $1,529,553.86, exclusive of interest.

29.

Despite amicable demand, all of the above named parties refuse to compensate the M/V Q JAKE for her damages.

**ALLEGATIONS ON BEHALF OF M/V SERENA P**

30.

On January 20, 2016, the M/V SERENA P was under compulsory pilot and was proceeding downbound in the Mississippi River during high water conditions when barges from the UBT Terminal and Barge Fleeting Area in Davant, Louisiana broke free and drifted into her path, embarrassing her navigation. The M/V SERENA P took proper evasive action, but was unable to avoid the barges.

31.

The damages suffered by the M/V SERENA P were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of United Bulk Terminals Davant, LLC and Marquette Transportation Company Gulf-Inland LLC in the following particulars, among others, which will be shown at trial of this matter:

(1)     Failing to provide adequate moorings to ensure security of the fleet;

(2)     Failing to ensure that the fleet was moored so as to withstand the normal surge and suction and other forces of passing vessel traffic;

(3)     Failing to reduce the number of barges on moorings in light of the additional strain caused by high river conditions;

(4)     Failing to take immediate action to correct any deficiencies in the moorings and/or security of the fleeting operations;

(5)     Failing to comply with Coast Guard regulations and orders regarding fleet and vessel moorings;

(6)     Failing to take adequate measures to prevent the breakaway;

2810817-1                                              11

(7)     Failing to insure proper securing and re-securing of barges after other barges have been removed and/or added to the fleet;

(8)     Failing to exercise reasonable care in anticipating and considering both normal and adverse weather and/or high river conditions;

(9)     Failing to assign a person in charge of the fleeting facility to be in continuous surveillance and/or to observe and maintain a proper watch over the barges and vessels in the fleeting facility;

(10)    Failing to inspect the fleeting facility for movements that are unusual for properly secured vessels and barges;

(11)    Failing to ensure that the mooring to the fleet by any non-fleet vessels, such as harbor tugs, did not over charge the fleet's moorings, or alternatively to prohibit mooring by such non-fleet vessels;

(12)    Failing to ensure that the barge fleeting facility was within the permit limits and regulations promulgated by the U.S. Army Corps of Engineers and other local and federal authorities; and

(13)    Other acts of negligence, fault, or statutory violations which will be established at trial.

32.

The damages suffered by the M/V SERENA P were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of ADMIRAL BULKER, in the following particulars, among others, which will be shown at trial of this matter:

(1) The ADMIRAL BULKER and those in charge of her navigation failed to exercise the necessary caution required by the circumstances;

(2) The ADMIRAL BULKER and those in charge of her navigation failed to maintain a proper course and speed required by the circumstances;

(3) The ADMIRAL BULKER failed to take any, or proper steps to minimize or avoid the effect of its wake and/or suction created when it passed the UBT fleeting facility.

33.

The damages suffered by the M/V SERENA P were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of KOKUKA GLORIOUS, in the following particulars, among others, which will be shown at trial of this matter:

(1) The KOKUKA GLORIOUS and those in charge of her navigation failed to exercise the necessary caution required by the circumstances;

(2) The KOKUKA GLORIOUS and those in charge of her navigation failed to maintain a proper course and speed required by the circumstances; and

(3) The KOKUKA GLORIOUS failed to take any, or proper steps to minimize or avoid the effect of its wake and/or suction created when it passed the UBT fleeting facility.

34.

The damages suffered by the M/V SERENA P were caused by and/or contributed to by the fault, neglect, and/or lack of reasonable care on the part of Canal Barge Company, Inc. and Ingram Barge Company in the following particulars, among others, which will be shown at trial of this matter:

(1)    Failing to deliver seaworthy barges to the fleet; and

(2)    Failing to warn that the barges had latent and non-apparent defects that rendered them incapable of bearing reasonably anticipated stresses.

35.

United Bulk Terminals Davant, LLC, Marquette Transportation Company Gulf-Inland, LLC, Canal Barge Company, Inc., Ingram Barge Company, ADMIRAL BULKER, *in rem*, her owners, Eurex Bulker SA, *in personam*, and KOKUKA GLORIOUS, *in rem*, and her owners, Camellia Maritime S.A., *in personam*, are liable under the general maritime law for any and all damages and/or injuries sustained by the M/V SERENA P.

36.

As a result of the above described events, the M/V SERENA P sustained damages totaling $541,713.99, exclusive of interest.

37.

Despite amicable demand, all of the above named parties refuse to compensate the M/V SERENA P for her damages.

WHEREFORE, Q JAKE Shipping Ltd. and SERENA P Stefan Patjens, appearing herein solely as claimants and owners of the M/V Q JAKE and the M/V SERENA P respectively, and making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty & Maritime Claims of the Federal Rules of Civil Procedure, pray for the following relief:

1. That after all due proceedings, the Court enter Judgment in Plaintiffs' favor against Defendants together with an award for plaintiffs' damages, interest, attorneys' fees, and costs; and

2. Furthermore, Q JAKE Shipping Ltd. and SERENA P Stefan Patjens, pray for all just and equitable relief to which they may be entitled.

Respectfully submitted,

*s/ Daniel A. Tadros*

Daniel A. Tadros, T.A. #21906
Thomas D. Forbes, #5682
Laura B. Knoll, #36534
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
***Attorneys for Q JAKE Shipping Ltd., appearing herein solely as claimant and owner of the M/V Q JAKE, and SERENA P Stefan Patjens, appearing herein solely as claimant and owner of the M/V SERENA P***

**PLEASE WITHHOLD IN REM SERVICE
ON THE ADMIRAL BULKER AND
THE KOKUKA GLORIOUS UNTIL
FURTHER NOTICE.**

2810817-1                                  15

# VERIFICATION

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

## DANIEL A. TADROS

who, being duly sworn, did depose and say:


That he is a member of the firm Chaffe McCall, LLP, counsel for plaintiffs Q JAKE Shipping Ltd. ("Q JAKE Shipping"), not making a general appearance, but appearing herein solely as *in rem* claimant and owner of the M/V Q JAKE and making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty & Maritime Claims of the Federal Rules of Civil Procedure, and SERENA P Stefan Patjens ("Stefan Patjens"), not making a general appearance, but appearing herein solely as *in rem* claimant and owner of the M/V SERENA P and making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty & Maritime Claims of the Federal Rules of Civil Procedure; that he makes this verification on behalf of plaintiffs because plaintiffs are corporations with no officers within the district to sign same; that he is authorized to make this Affidavit and to file the foregoing Complaint on behalf of plaintiffs; that he has read the above and foregoing Verified Original Complaint and all the allegations of fact therein contained are true and correct, upon information and belief, and based upon publicly available information sources, conversations

2810817-1

with representatives of plaintiffs, and e-mails and documents received from plaintiffs.

_____

**DANIEL A. TADROS**

**SWORN TO AND SUBSCRIBED**
**BEFORE ME THIS**
**22nd DAY OF DECEMBER, 2016**

NOTARY PUBLIC
My Commission Expires at Death
Katharine R. Colletta
Notary Public
State of Louisiana
Notary ID # 65679
Commission Expires At Death

2810817-1

17